**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO.  25-241** |
| **JOSIAH DAVID** | **SECTION: "E"** |

## ORDER AND REASONS

Before the Court is a Motion for Revocation of the Magistrate Judge's Detention Order filed by Defendant Josiah David ("Defendant").[1] The Government filed an opposition.[2]  Defendant filed a reply.[3]

## BACKGROUND

On September 25, 2025, a federal grand jury in the Eastern District of Louisiana indicted Defendant, another named individual co-defendant, and multiple business entity co-defendants, in an eight-count indictment.[4] Defendant faces charges for conspiracy to commit wire fraud, wire fraud, and conspiracy to obstruct justice.[5]

On October 27, 2025, Defendant made his initial appearance before Magistrate Judge Currault.[6] In the minute entry for this proceeding, entered on October 27, 2025, Magistrate Judge Currault released the Defendant and ordered him to reappear on October 31, 2025 for his arraignment, detention hearing, and hearing to determine counsel.[7] Magistrate Judge Currault also provisionally ordered Defendant not to contact "victims, witnesses, co-defendants, or representation of co-defendants other than

---

[1] R. Doc. 116.
[2] R. Doc. 118.
[3] R. Doc. 119.
[4] R. Doc. 1.
[5] *Id.*
[6] R. Doc. 15.
[7] *Id.* at p. 2.

through counsel pending [his] detention hearing scheduled for October 31, 2025."[8] The only reasonable interpretation of this order is that the magistrate judge allowed Defendant to have contact with victims, witnesses, and co-defendants only through his counsel in *this* action.

The Government presented evidence that, the next day, on October 28, 2025, Defendant sent an email to an attorney, who was not Defendant's counsel of record in this action,[9] attaching a message he intended to be read to investors in the business entity co-defendants in this action.[10] The email instructed the attorney to "send the attached letter to the Board of [D]irectors" and informed the attorney that he "want[ed] this [letter] read" to the investors.[11] In this letter, Defendant bemoaned the fact that he was not allowed to "talk directly or indirectly with anyone who has any involvement with the case" and stated that "the ones who have been obstructing justice this whole time are [his] opponents" who are "seeking to take away [his] rights to defend [him]self."[12]

On October 31, 2025, Defendant appeared for his arraignment, detention hearing, and hearing to determine counsel.[13] On that date, Magistrate Judge Currault ordered Defendant released on bond subject to a series of conditions, including that he have "[n]o contact directly or indirectly with witnesses, victims, representatives of co-defendants to include all investors in any of the companies [referenced in the indictment] absent the counsels of record" and that he not "act in the capacity of an advisor or assistant to any company."[14]

---

[8] *Id.*
[9] The attorney, Anthony Montemurro, was Defendant's counsel in an SEC investigation against him.
[10] R. Doc. 116-2.
[11] *Id.* at p. 2 (Defendant's October 28, 2025 Letter).
[12] *Id.*
[13] R. Doc. 22.
[14] R. Doc. 26 at pp. 2-3.

On November 20, 2025, the Government filed a motion to revoke Defendant's bond as a result of Defendant's October 28, 2025 email and Defendant having his statement read at a November 4, 2025 meeting of investors.[15] Magistrate Judge Currault held a three day hearing on December 17,[16] 18,[17] and 22, 2025[18] on the Government's motion. At Defendant's December 17, 2025 bond revocation hearing, Department of Labor Inspector General Special Agent Allyson Hoffine testified that Bob Graham, an investor in one of the business entity co-defendants, who is not Defendant's attorney in this action or otherwise, read Defendant's letter at the November 4, 2025 investor meeting.[19] Special Agent Hoffine further testified that, on November 11, 2025, investors received an unsigned email from "Backroom@oopra.org."[20] While the Government did not establish that Defendant sent this email, the Government did point out that the email used "verbiage eerily similar to David's tone and parlance," and that the email "conveyed significant information designed to influence the investors."[21] Specifically, the email discussed the "logistics of a 'Go Fund me' style account" to pay for Defendant's legal expenses and claimed that the Government sought to "shut up" Defendant and "not allow him to speak" to investors.[22] The magistrate judge found Defendant had violated his bond by contacting investors in the business entity co-defendants.[23] Rather than revoke Defendant's bond, on January 6, 2026, Magistrate Judge Currault issued an order imposing additional bond conditions, including:

---

[15] R. Doc. No. 37.
[16] R. Doc. 63.
[17] R. Doc. 64.
[18] R. Doc. 65.
[19] R. Doc. 112 at p. 20. Agent Hoffine testified that she listened to a recording of this meeting. December 17, 2025 Bond Revocation Hearing Exhibit No. 2 (recording of the meeting).
[20] R. Docs 118-3; 112 at p. 26. "OOPRA" is the abbreviation for Out of Pocket Relief for Americans, LLC, which is one of the business entity co-defendants in this matter.
[21] R. Doc. 118 at p. 5.
[22] R. Doc. 118-3.
[23] R. Doc. 113 at p. 13.

• The defendant shall not send an email without including one or more of his counsel of record in the instant matter as a recipient.[24]

On January 30, 2026, the U.S. Probation Office filed a petition requesting the magistrate judge order Defendant to appear and show cause why his bond should not be revoked for additional violations of the conditions of his release.[25] Magistrate Judge Currault granted this petition and issued a summons to Defendant.[26]

Magistrate Judge Currault held a bond revocation hearing on April 6, 2026.[27] At the hearing, U.S. Probation Officer Gregory Burch testified that Defendant violated the additional bond condition imposed on January 6, 2026 by failing to copy his counsel on emails he sent on January 22 and March 3, 5, and 6, 2026.[28] At the hearing, the Government played an audio recording from a March 25, 2026 conference call involving investors in the business entity co-defendants during which one of the investors relayed information from a meeting he had had with Defendant.[29] Based on his listening to this recording, Probation Officer Burch testified that the investor who had participated in the meeting with Defendant informed the other investors that Defendant had identified three "urgent" tasks for the business entity co-defendants to complete, namely (1) a patent filing, (2) replacing the attorney in a lawsuit brought by the SEC in New Jersey against the business entity co-defendants, and (3) retaining counsel in the instant case.[30] Probation Officer Burch testified that the investors agreed to provide $20,000 to address these three issues.[31] Following the hearing, Magistrate Judge Currault issued an order

---

[24] R. Doc. 71 at p. 2.
[25] R. Doc. 80.
[26] R. Doc. 81.
[27] R. Doc. 105.
[28] R. Doc. 115 at pp. 11-14, 16-19; April 6, 2026 Bond Revocation Hearing Exhibit Nos. 1-2.
[29] *Id.* at pp. 24-25.
[30] *Id.*
[31] *Id.* at p. 25.

revoking the Defendant's bond and remanding Defendant to the custody of the United States Marshal.[32]

On April 27, 2026, Defendant filed the instant motion to revoke Magistrate Judge Currault's decision.[33] Defendant argues Magistrate Judge Currault should not have revoked his bond.[34] Defendant argues Magistrate Judge Currault should never have modified the conditions of his bond to include the requirement that he copy his counsel on every email; that the October 28, 2025 statement he authored and directed to investors did not constitute a violation of his bond conditions because he made this statement indirectly by passing it through an attorney, even though this attorney was not his counsel of record in this matter; and that the Government never provided clear evidence that he sent the November 11, 2025 email.[35] Defendant admits he violated the modified conditions of his bond by failing to copy his counsel of record on multiple emails[36] but argues he later forwarded these emails to his attorneys, making these violations "minor, inadvertent failures" that do not justify revocation.[37] Defendant further argues his age and health conditions justify his release on bond; Defendant argues he has a papilloma in his throat which requires specialized care he is not receiving while in jail.[38]

The Government argues Defendant's bond conditions allowed him to communicate with investors only through counsel of record, and that the attorney to whom Defendant sent the October 28, 2025 letter was never his counsel of record in this

---

[32] R. Doc. 105. Magistrate Judge Currault also denied Defendant's motion to modify the conditions of his bond by removing the requirement that he be supervised by a third-party custodian and that he copy counsel of record on all emails. R. Doc. 102.

[33] R. Doc. 116-1.

[34] *Id.*

[35] *Id.* at pp. 4-6.

[36] R. Doc. 116 at p. 1 ("the violations that occurred after those unnecessary modifications relate to four minor and insignificant emails in which undersigned counsel was not copied, but which Mr. David forwarded to counsel shortly thereafter.")

[37] R. Doc. 116-1 at p. 7.

[38] *Id.* at p. 10.

matter.[39] The Government further argues that Defendant admits he violated the conditions of his bond by failing to copy his attorneys on emails he sent on January 22 and March 3, 5, and 6, 2026, and that these violations are not minor or insignificant given Defendant's history of obstruction.[40]

## LAW AND ANALYSIS

The Bail Reform Act, 18 U.S.C. § 3142, governs whether a defendant should be released or detained pending trial. When a court determines release is appropriate, it may condition a defendant's pretrial release on the defendant's satisfaction of one or more conditions, as long as those conditions are the least restrictive necessary to reasonably assure the appearance of the defendant and the safety of any person and the community.[41] The Act expressly permits conditions that require a defendant to "abide by specified restrictions on personal associations," "avoid all contact with . . . a potential witness who may testify concerning the offense," and "satisfy any other condition that is reasonably necessary . . . to assure the safety of the community."[42] Courts may impose conditions that restrict contact between a defendant and other individuals in order to protect the community.[43]

A court may order the detention of a Defendant previously released on bond if the court finds (1) there is clear and convincing evidence the defendant has violated a condition of release,[44] and (2) considering the factors listed in 18 U.S.C. § 3142(g), there

---

[39] R. Doc. 118 at p. 14.
[40] *Id.* at p. 16.
[41] *See* 18 U.S.C. §§ 3142(c)(1), (c)(1)(B).
[42] 18 U.S.C. §§ 3142(c)(1)(B)(iv), (v), (xiv).
[43] *See, e.g.*, *United States v. Jackson*, No. 24-164, 2025 WL 1032028 at *2 (W.D. Wash. Apr. 7, 2025).
[44] 18 U.S.C. § 3148(b)(1)(B). While the Court must find by clear and convincing evidence that Defendant violated a condition of his release, the Federal Rules of Evidence do not apply strictly to bond proceedings. Fed. R. Evid. 101 states that "(t)hese rules govern proceedings in the courts of the United States and before United States magistrates, to the extent and with the exceptions stated in rule 1101." Fed. R. Evid. 1101(d)(3) provides that "(t)he rules (other than with respect to privileges) do not apply (to) ... proceedings

is no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community; or the person is unlikely to abide by any condition or combination of conditions of release.[45] The § 3142(g) factors require courts to consider (1) the nature and circumstances of the offense; (2) the weight of evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by release. If a court orders the detention of a criminal defendant, the defendant may file a motion for revocation of this order of detention under 18 U.S.C. § 3145(b) with the court having original jurisdiction over the offense.[46] The "court having original jurisdiction over the offense" is the district court in which the criminal charges are pending.[47] Such motion "shall be determined promptly."[48] When reviewing a motion to revoke or amend the conditions of a magistrate judge's release or detention order, a district court "acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release."[49] District courts in other circuits have detained criminal defendants on bond for violating a no contact condition of bond.[50]

Defendant argues the Court should revoke Magistrate Judge Currualt's detention order because Magistrate Judge Currualt should never have modified the conditions of

---

with respect to release on bail or otherwise." *See United States v. Montemayor*, 666 F.2d 235, 237 (5th Cir. 1982).

[45] 18 U.S.C. § 3148(b)(2)(A)-(B).

[46] 18 U.S.C. § 3142(g).

[47] *United States v. Brigham*, 569 F.3d 220, 229-30 (5th Cir. 2009).

[48] *Id.*

[49] *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992).

[50] *See, e.g., United States v. Jefferson*, No. 23-109, 2024 WL 5077219, *2 (W.D. Wash. Dec. 10, 2024) (affirming detention of defendant who violated "no contact" bond condition ); *United States v. Taylor*, No. 13-80031, 2020 WL 5507210, at *3 (S.D. Fla. Sept. 11, 2020) (detaining defendant who, violated his bond condition the day after his release by contacting and attempting to influences witnesses); *United States v. Abovyan*, No. 18-80122, 2018 WL 4203687, at *2 (S.D. Fla. Aug. 31, 2018); *United States v. Heffington*, No. 16-09, 2016 WL 5339606, at *5 (E.D. Ky. Sept. 21, 2016) (detaining defendant "[b]ecause Defendant has proved himself willing to violate the one additional bond condition placed on him, which was designed specifically to protect the quality of justice").

his bond to include the requirement that he copy his counsel on every email he sends.[51] Defendant's counsel represents that Defendant sent the October 28, 2025 email and letter, but only to his attorney (although not his attorney in this action), and that his attorney, not him, sent this letter to the investors.[52] Defendant argues this did not constitute a violation of his bond terms because he made the contact only indirectly by passing it through an attorney who had represented him in an SEC investigation.[53] Defendant further argues the Government did not provide sufficient evidence that Defendant sent the November 11, 2025 email from the address "backroom@oopra.org."[54] As a result, Defendant argues Magistrate Judge Currault modified the conditions of his bond on January 6, 2026 under the mistaken belief Defendant had violated his bond when he had not and, as a result, he should not have been subject to these modified conditions which he later violated.[55]

Defendant further argues the § 3142(g) factors weigh in favor of his release.[56] Defendant argues the nature and circumstances of the offenses charged in the indictment weigh in favor of release, as he is not charged with a crime of violence or other crimes that involve the safety of the community.[57] Defendant argues that, considering his history and characteristics, this Court should order his release on bond.[58] Defendant argues his age and physical condition support his release, as he has a papilloma on his throat which requires specialized medical care from a doctor.[59] Defendant argues he is not receiving

---

[51] R. Doc. 116-1 at pp. 4-6.
[52] *Id.* at pp. 4-5.
[53] *Id.* at pp. 4-6.
[54] *Id.* at p. 6.
[55] *Id.*
[56] *Id.* at p. 9.
[57] *Id.*
[58] *Id.* at p. 10.
[59] *Id.*

this specialized care while incarcerated.[60] Defendant further argues he has never failed to appear before this Court or any other court in a criminal case against him.[61] In addition, Defendant argues his failure to copy his attorneys on multiple emails is a minor violation of the conditions of his bond that do not warrant his detention.[62]

The Government argues Defendant's original bond conditions, imposed on October 31, 2025, allowed him to communicate with investors only through counsel of record, and that the attorney to whom Defendant sent the October 28, 2025 letter was never his counsel of record in this matter.[63] The Government argues Magistrate Judge Currault appropriately modified Defendant's bond conditions on January 6, 2026 to include the requirement that he copy his counsel of record on every email he sent.[64] The Government further argues Magistrate Judge Currault appropriately revoked Defendant's bond on April 6, 2026.[65] The Government argues that application of the § 3142(g) factors makes clear that no condition or combination of release conditions exists to assure Defendant will not pose a danger to the community.[66] The Government argues Defendant has repeatedly violated the conditions of his bond and that his contacts with the investors in the business entity co-defendants were strategically designed to manipulate his victims and inhibit the judicial process.[67]

First, the Court finds the Government offered clear and convincing evidence that Defendant violated the conditions of his release. 18 U.S.C. § 3142(c) states that a court may impose conditions of release that require a defendant to "abide by specified

---

[60] *Id.*
[61] *Id.*
[62] *Id.* at p. 7
[63] R. Doc. 118 at p. 15.
[64] *Id.* at p. 15.
[65] *Id.* at p. 16.
[66] *Id.*
[67] *Id.* at p. 17.

restrictions on personal associations," "avoid all contact with . . . a potential witness who may testify concerning the offense," and "satisfy any other condition that is reasonably necessary . . . to assure the safety of the community."[68] Courts in this circuit have routinely imposed these types of conditions.[69]

Magistrate Judge Currault properly imposed a contact restriction, requiring Defendant to copy his counsel on every email; Defendant violated this condition. The Government offered clear and convincing evidence that Defendant sent emails without copying his counsel on January 26, March 3, March 5, and March 6, 2026.[70] In fact, Defendant admits he violated the conditions of his bond by failing to copy his counsel of record on multiple emails.[71] Furthermore, the Government offered clear and convincing evidence that Defendant violated his original and provisional bond conditions by not withdrawing his instructions to his attorney, who was not his counsel of record in this matter, to send his October 28, 2025 letter to investors in the business entity co-defendants and to read the letter at an investor meeting.[72] Courts have revoked a criminal defendant's bond when presented with evidence that the defendant violated his or her bond by contacting witnesses.[73] In this case, Defendant clearly contacted individuals

---

[68] 18 U.S.C. §§ 3142(c)(1)(B)(iv), (v), (xiv).

[69] *United States v. Olivarez*, No. 22-00687, 2022 WL 16836338, at *2 (S.D. Tex. Nov. 9, 2022) ("The no-contact order is necessary to prevent Defendant from colluding with perhaps the prosecution's most important witness in this harboring case[.]"); *United States v. Barker*, No. 16- 516, 2017 WL 345643, at *2 (N.D. Tex. Jan. 24, 2017) (denying motion to amend conditions of bond that included a condition to "[a]void all contact, directly or indirectly (including by any electronic means), with any known codefendants except in the presence of counsel.")

[70] R. Doc. 115 at pp. 11-14, 16-19.

[71] R. Doc. 116 at p. 1 ("the violations that occurred after those unnecessary modifications relate to four minor and insignificant emails in which undersigned counsel was not copied, but which Mr. David forwarded to counsel shortly thereafter.").

[72] 18 U.S.C. § 3148(b)(1)(B) provides that a defendant's bond may be revoked if a court finds that there is "clear and convincing evidence that the person has violated *any* other condition of release." The statute does not require a court to consider only a defendant's most recent bond violations.

[73] *See, e.g., United States v. Jefferson*, No. 23-109, 2024 WL 5077219, *2 (W.D. Wash. Dec. 10, 2024) (affirming detention of defendant who violated "no contact" bond condition ); *United States v. Taylor*, No. 13-80031, 2020 WL 5507210, at *3 (S.D. Fla. Sept. 11, 2020) (detaining defendant who, violated his bond condition the day after his release by contacting and attempting to influences witnesses).

other than through his counsel of record and failed to copy his counsel of record on emails, all in violation of the conditions of his bond. While Defendant argues these violations were insignificant, the Court finds that such failures demonstrate a consistent propensity to flaunt the conditions of bond that Magistrate Judge Currault imposed.

In addition, considering the § 3142(g) factors, the Court finds that no condition or combination of conditions will reasonably assure the appearance of Defendant as required and the safety of any other person and the community. Courts have recognized that concerns for the safety of the community include being free from efforts to obstruct proceedings.[74] Defendant has shown that he will not hesitate to contact investors in an attempt to influence their reactions to his criminal charges. Specifically, Defendant's October 28, 2025 letter, which he admits he sent and intended to be read at an investor meeting, clearly sought to discredit the Government's case against the Defendant and further legitimize his allegedly fraudulent scheme.[75] Furthermore, Defendant continued to communicate with investors and attempted to direct the activities of the business entity co-defendants even after Magistrate Judge Currault issued a summons for Defendant's second bond revocation hearing.[76] As Defendant is charged with obstruction of justice, such communications are persuasive evidence that he intended to alter the investors' reactions to these proceedings, and to continue directing their activities. Accordingly, the nature of Defendant's crimes and the concern that he may continue to contact investors in the business entity co-defendants—factors (1) and (4) of § 3142(g)—weigh in favor of his detention.

---

[74] *See, e.g., United States v. Ashley*, No. 20-318, 2022 WL 1046363, at *5 (E.D. Tex. Apr. 7, 2022) ("There is sufficient evidence that Defendant's release would endanger the community and would present a risk that Defendant would obstruct justice or flee prosecution."); *United States v. Stern*, 465 F. Supp. 3d 699, 702 (S.D. Tex. 2020).

[75] R. Doc. 116-2 at p. 2.

[76] R. Doc. 115 at pp. 24-25.

Factor (3), the history and characteristics of Defendant, also weighs in favor of his detention. While Defendant argues his health condition, namely the papilloma on his throat for which he requires treatment, warrants his release on bond,[77] the Court finds this factor alone does not justify revoking Magistrate Judge Currault's detention order. Defendant has failed to offer proof he is not receiving adequate treatment for this condition while incarcerated. Defendant offers a surgical appointment packet given to him in advance of a procedure on his papilloma that he underwent on February 23, 2026 as proof of his medical condition and that he is not receiving his required treatment.[78] However, this document merely contains instructions for Defendant to carry out before a medical procedure; it does not prove that Defendant has not received adequate medical treatment while incarcerated. Moreover, Defendant has a demonstrated history of attempting to influence the investors who might be witnesses in this action. Accordingly, factor (3)—the history and characteristics of the Defendant—weighs in favor of his detention. Considering the § 3142(g) factors, the Court finds that no condition or combination of conditions other than incarceration will reasonably assure the appearance of Defendant as required and the safety of any other person and the community.

In addition, the Court finds Defendant is unlikely to abide by any condition or combination of conditions of his release. Defendant has violated his bond on numerous occasions. In addition to his failures to copy his counsel on multiple emails, Defendant violated his provisional bond condition, entered on October 27, 2025, that prohibited him from contacting "victims, witnesses, co-defendants, or representation of co-defendants other than through counsel," and his original bond condition, entered on October 31, 2025,

---

[77] R. Doc. 116-1 at p. 3.
[78] R. Doc. 84-2.

that prohibited him from making "contact directly or indirectly with witnesses, victims, representatives of co-defendants to include all investors in any of the companies [referenced in the indictment] absent the counsels of record."[79] The Government presented evidence that, on October 28, 2025, Defendant sent a letter to an attorney, who was not his counsel of record in this action, asking this attorney to pass along the letter so it could be read to investors at an up-coming meeting.[80] The Government presented evidence that a "representative" of Defendant, who was not his counsel of record in this matter, read this statement at a November 4, 2025 meeting.[81] Defendant clearly intended this letter to be read to investors, not a different audience; he stated in his email to his attorney (although not in this action) that he wanted the attorney to send this letter to the board of directors and that he wanted the letter to be read to the investors.[82] This constitutes a violation of Defendant's provisional and original bond conditions that prohibited him from contacting investors except through his counsel of record in this action. The Court has found that the only reasonable interpretation of Magistrate Judge Currault's provisional bond condition is that Defendant could contact investors only through Defendant's counsel in *this* matter. Even if this were not the only reasonable interpretation, Magistrate Judge Currault clarified in her October 31, 2025 order setting Defendant's original bond conditions that Defendant was prohibited from making contact with victims or witnesses "absent the counsels of record."[83] Defendant was, or should have been, aware several days before the November 4, 2025 meeting that having someone who was not his counsel of record read his letter at the meeting would violate a condition of his bond. Before the

---

[79] R. Doc. 26 at p. 2.
[80] R. Doc. 116-2 at p. 1.
[81] R. Doc. 112 at p. 19.
[82] R. Doc. 116-2 at p. 1.
[83] R. Doc. 26 at p. 2.

November 4, 2025 meeting occurred, Defendant could have withdrawn his statement and prevented it from being read at the meeting, but he did not. Furthermore, Defendant has made clear that he does not find the restrictions on his ability to communicate with investors reasonable,[84] and his repeated violations show that Defendant intends to behave as he sees fit rather than how the Court instructs him.

Accordingly, the Court finds (1) there is clear and convincing evidence that Defendant has violated a condition of his release[85] and (2) considering the factors listed in 18 U.S.C. § 3142(g), there is no condition or combination of conditions that will reasonably assure the appearance of Defendant and the safety of any other person and the community.[86] The Court further finds that Defendant is unlikely to abide by any condition or combination of conditions of release. As a result, Defendant will remain in the custody of the U.S. Marshal.

### CONCLUSION

**IT IS ORDERED** that Defendant's Motion for Revocation of the Magistrate Judge's Detention Order is **DENIED**.[87]

**New Orleans, Louisiana, this 14th day of May, 2026.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[84] R. Doc. 116-2 (Defendant's letter to the Court and to the investors in the business entity co-defendants)("I am charged with a serious crime and I have to build a case to defend myself, but I cannot talk directly or indirectly with anyone who has any involvement with the case. Does that make any sense to you, Judge?").
[85] 18 U.S.C. § 3148(b)(1)(B).
[86] 18 U.S.C. § 3148(b)(2)(A)-(B).
[87] R. Doc. 116.